FILED

DEC - 3 2014

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE OLIVER BRAUN, | No. C 12-3633 BLF (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| KIM HOLLAND, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner, a state prisoner who is represented by counsel, seeks federal habeas relief under 28 U.S.C. § 2254 from his state convictions on grounds that (1) the admission of propensity evidence at trial violated his right to due process; (2) the jury instructions on the use of that propensity evidence lessened the burden of proof; (3) defense counsel rendered ineffective assistance both at the trial and pleading stages; and (4) there was cumulative error. Because none of these claims warrant habeas relief, the petition is DENIED.

## BACKGROUND

Petitioner challenges two sets of convictions. The first occurred in 2007, when a Sonoma County Superior Court jury found petitioner guilty of three counts of committing lewd acts with a child (Jane Doe 1, the eight year old daughter of petitioner's

United States District Court
For the Northern District of California

1    friend).  The second also occurred in 2007 when, pursuant to a plea agreement, petitioner

2    pleaded no contest to one count of committing a lewd act with a child (Jane Doe 2, the 10

3    year old daughter of petitioner's roommate).  Consequent to these convictions, petitioner was

4    sentenced to a total term of 12 years in state prison.[1]  He sought, but was denied, relief on

5    direct and collateral state judicial review.  This federal habeas petition followed.  (Ans. at 1.)

6         Evidence presented at the Jane Doe 1 trial showed that in 2004 petitioner touched her

7    breasts and vagina, and other parts of her body, with his penis and hands.  Jane Doe 2 also

8    testified at this trial.  She testified that petitioner would lie on top of her and rub his genitals

9    against hers while the pair were clothed.  She also testified that she once woke to find

10   petitioner masturbating in her room, and that she sometimes saw petitioner masturbating on

11   the floor of his room while looking at her bedroom door.  (Ans., Ex. I (State Appellate Court

12   Opinion) at 2–4.)

13                           **STANDARD OF REVIEW**

14        Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this

15   Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

16   pursuant to the judgment of a State court only on the ground that he is in custody in violation

17   of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

18   petition may not be granted with respect to any claim that was adjudicated on the merits in

19   state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that

20   was contrary to, or involved an unreasonable application of, clearly established Federal law,

21   as determined by the Supreme Court of the United States; or (2) resulted in a decision that

22   was based on an unreasonable determination of the facts in light of the evidence presented in

23   the State court proceeding."  28 U.S.C. § 2254(d).

24

25

26   _____

27        [1] Petitioner was sentenced to six years for the first count in the Jane Doe 1 case, and to
     three consecutive two-year terms for the remaining two counts in the Jane Doe 1 case and the

28   single count in the Jane Doe 2 case. (Second Am. Pet., Mem. of P. & A. at 7.)

United States District Court
For the Northern District of California

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I.   Admission of Propensity Evidence at Trial

At the trial on the charges relating to Jane Doe 1, Jane Doe 2 testified about the (then uncharged) sexual acts petitioner committed with her (Jane Doe 2). Petitioner claims that this testimony constituted impermissible character or propensity evidence. Its admission at trial therefore violated his right to due process and was prejudicial. (Second Am. Pet., Mem. of P. & A. at 12.) The state appellate court rejected this claim, finding that the testimony was properly admitted under a state evidence rule that allows for the introduction of evidence of prior sexual offenses to prove a defendant's conduct on a particular occasion:

> [Petitioner] contends the trial court abused its discretion in admitting Jane Doe 2's testimony under Evidence Code [footnote omitted] section 1108 in the Jane Doe 1 case.
>
> As a general rule, evidence of uncharged crimes is inadmissible to prove a [petitioner]'s conduct on a particular occasion. (§ 1101.) The Legislature has created an exception to this rule, however, in section 1108, which provides in pertinent part: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is

United States District Court
For the Northern District of California

not inadmissible pursuant to Section 352." Our Supreme Court upheld the constitutionality of section 1108 against a due process challenge in *People v. Falsetta* (1999) 21 Cal.4th 903, 910–922 (*Falsetta*), relying in part on the trial court's discretion to exclude unduly prejudicial evidence.

. . . .

[Petitioner] contends that under the facts of this case, the trial court abused its discretion under section 352 [footnote omitted] in admitting Jane Doe 2's testimony pursuant to section 1108. He argues that the People's case was weak and that in the circumstances, Jane Doe 2's testimony was likely to be the deciding factor in the case. He relies for this argument on *People v. Antick* (1975) 15 Cal.3d 79 (*Antick*), disapproved on another ground in *People v. McCoy* (2001) 25 Cal.4th 1111, 1123. There, the trial court had admitted evidence of a prior uncharged burglary for the purpose of identifying the defendant as an accomplice in the charged crimes. (*Antick, supra*, 15 Cal.3d at p. 92.) The Court of Appeal concluded the evidence should have been excluded, noting that there were no distinctive common marks shared by the charged and uncharged crimes to justify the admission of the evidence to prove identity. (*Id.* at p. 94.) The court went on to conclude that the defendant had improperly been impeached on cross-examination with two prior forgery convictions, stating that despite limiting instructions, the jury was likely to consider the evidence for the improper purpose of determining propensity to commit crimes, particularly where the prosecution's case was weak. (*Id.* at pp. 96–97.) *Antick* does not aid [petitioner]. The disputed evidence of other crimes in *Antick* was not admissible to prove propensity. In enacting section 1108, however, the Legislature determined that in considering sex crimes, evidence of other acts to show propensity is admissible.

Nor are we persuaded by [petitioner]'s argument that the trial court should have excluded Jane Doe 2's testimony because the prosecution's case was weak. We recognize that Jane Doe 1's credibility was at issue after she made statements that were inconsistent or suggested her testimony had not been wholly accurate. One of the purposes of section 1108, however, is to aid the trier of fact in determining questions of credibility related to sexual offenses. (*Falsetta, supra*, 21 Cal.4th at p. 911.) Jane Doe 2's testimony about [petitioner]'s prior sexual offenses was properly admitted under section 1108 to aid the jury in deciding whether Jane Doe 1's testimony was credible.

[Petitioner] contends, however, that even if the trial court properly admitted evidence of [petitioner]'s earlier offenses against Jane Doe 2, it abused its discretion in allowing her to testify about the offenses he committed when she was in junior high school, when he masturbated in her presence. [Petitioner] points out that in its motion to admit the prior acts, the People stated that beginning when Jane Doe 2 was in the eighth grade, [petitioner] would expose himself to her or masturbate in front of her approximately 20 times per week. [Petitioner] characterizes this anticipated testimony as "uniquely shocking and prejudicial," and argues it was less probative of propensity than the evidence that he fondled her and simulated sexual intercourse when she was 10 and 11 years old. In fact, however, Jane Doe 2 did not testify that [petitioner] committed these acts 20 times a week, instead testifying that she saw him masturbating in her room twice, and that she afterward saw him masturbating in his own room, looking toward hers, on an unspecified number of occasions. While these acts were not as similar to the charged offenses as were [petitioner]'s earlier acts against Jane Doe 2, they were still relevant to show

United States District Court
For the Northern District of California

his propensity to act in a sexually explicit manner toward the young daughters of his female friends. Indeed, as noted in *People v. Frazier* (2001) 89 Cal.App.4th 30, 40–41, "[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (Accord, *People v. Mullens* (2004) 119 Cal.App.4th 648, 659; *see also* § 1108, subd. (d)(1)(A); Pen. Code §§ 314, 647.6.) In the circumstances, we see no abuse of discretion in admitting Jane Doe 2's testimony.

*People v. Harris* (1998) 60 Cal.App.4th 727, upon which [petitioner] relies, does not persuade us otherwise. The defendant there, a mental health nurse, was charged with several sex offenses against women who had been admitted to a mental health care facility at which the defendant worked. (*Id.* at pp. 730–732.) At trial the court admitted evidence of a prior offense that had occurred 23 years earlier, in which the victim had been found unconscious, naked from the waist down, with blood on her vagina and mouth area, and defendant had been discovered hiding nearby, with blood on the inside of his thighs and on his penis. (*Id.* at pp. 734, 739.) The jury received only a partial and redacted account of the crime. (*Id.* at pp. 733–734.) The Court of Appeal concluded the evidence should not have been admitted under sections 1108 and 352, concluding the evidence was inflammatory in the extreme, and that the redacted version of the evidence would have caused confusion and speculation, was remote in time, and had no meaningful similarity to the offenses for which the defendant was being tried. (*Harris*, at pp. 737–741.) The same cannot be said here. In particular, the evidence of the uncharged offenses was no more inflammatory than the evidence of the charged offenses, and the offenses were similar enough to assist the jury in assessing Jane Doe 1's credibility.

Accordingly, we conclude that the evidence of [petitioner]'s offenses against Jane Doe 2 was properly admitted under section 1108. Having reached this conclusion, we need not consider [petitioner]'s alternate contention that the testimony was not properly admitted under section 1101 as evidence of [petitioner]'s intent. (*See Callahan, supra,* 74 Cal.App.4th at p. 372.)

(Ans., Ex. I at 6–9.)

Habeas relief is not warranted here because no remediable federal constitutional violation occurred. First, a petitioner's due process rights concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this issue as an "open question." *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Second, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Third, courts, including the California courts through section 1108,

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

1  have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it

2  in other criminal prosecutions." *United States v. LeMay*, 260 F.3d 1018, 1025 (9th Cir.

3  2001).  Fourth, any claim that the state court erred in admitting the evidence under state law

4  is not remediable on federal habeas review.  The state appellate court's ruling that the

5  evidence was properly admitted under state law binds this federal habeas court.  *Bradshaw v.*

6  *Richey*, 546 U.S. 74, 76 (2005).  Based on the foregoing, the state appellate court's rejection

7  of this claim was reasonable and is therefore entitled to AEDPA deference.  Accordingly, this

8  claim is DENIED.

9  **II.   Jury Instructions on the Propensity Evidence**

10        Petitioner claims that the jury instructions on the use of Jane Doe 2's testimony

11  (CALCRIM No. 1191, "Evidence of Uncharged Sex Offense") unconstitutionally lowered

12  the prosecution's burden to prove his guilt beyond a reasonable doubt.  (Second Am. Pet.,

13  Mem. of P. & A. at 13.)  The state appellate court concluded that the instructions did not

14  lessen the burden of proof, and rejected the claim:

15        [Petitioner] contends the instructions the jury received regarding the uncharged
        offenses against Jane Doe 2 unconstitutionally allowed him to be convicted of
16        the offenses against Jane Doe 1 by a mere preponderance of the evidence.
        [Footnote omitted.]
17
        The trial court instructed the jury pursuant to CALCRIM No. 1191 as follows:
18        "The People presented evidence that the [petitioner] committed the crimes of
        lewd and lascivious acts on a child under the age of 14 on Jane Doe 2, that
19        were not charged in this case.  These crimes are defined for you in the
        instructions.  [¶]  You may consider this evidence only if the People have
20        proved by a preponderance of the evidence that the [petitioner], in fact,
        committed the [un]charged offense.  [¶] . . . [¶]  If you do decide the
21        [petitioner] committed the uncharged offense, you may, but are not required to,
        conclude from the evidence that the [petitioner] was disposed or inclined to
22        commit sexual offenses, and based on that decision, also conclude that the
        [petitioner] was likely to commit and did commit lewd and lascivious acts on a
23        child under the age of 14, which was on Jane Doe 1, as charged here.  [¶]  If
        you conclude the [petitioner] committed the uncharged offense, itself, that
24        conclusion is only one factor to consider along with all the other evidence.  [¶]
        It is not sufficient by itself to prove that the [petitioner] is guilty of lewd and
25        lascivious acts on a child under the age of 14 on Jane Doe 1.  [¶]  The People
        must still prove each element of every charge beyond a reasonable doubt.  Do
26        not consider this evidence for any other purpose."  [Petitioner] contends this
        instruction improperly invited the jury to convict him if it were convinced of
27        his guilt by a mere preponderance of the evidence.

28

*[left margin]* United States District Court
For the Northern District of California

This position has been rejected by our Supreme Court. In *People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016 (*Reliford*), the court considered the 1999 version of CALJIC No. 2.50.01, which was substantially similar to CALCRIM No. 1191. FN6[.]  The defendant there contended the instruction was likely to mislead the jury concerning the prosecution's burden of proof. (*Reliford*, at p. 1012.)  The court rejected this contention.  In doing so, it first noted that the inferences that (1) a defendant who has committed sex crimes in the past may have a disposition to commit sex crimes, and that (2) a defendant with a predisposition to commit sex crimes was likely to commit and did commit the charged offense, were legitimate. (*Id.* at pp. 1012–1013.)  The court went on to address the defendant's argument that, having found the uncharged sex crime true by a preponderance of the evidence, the jury would rely on that alone to convict him of the charged offenses.  The court rejected this argument, stating, "[t]he problem with defendant's argument is that the instruction nowhere tells the jury it may rest a conviction solely on evidence of prior offenses.  Indeed, the instruction's next sentence says quite the opposite: 'if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.'" (*Id.* at p. 1013.)  These instructions, the court concluded, "could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct." (*Ibid.*)  The court also rejected the position that a jury might interpret the instruction to permit conviction of the charged offenses under the preponderance-of-the-evidence standard, stating, "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof.  Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense . . . The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' [Citations.] Any other reading would have rendered the reference to reasonable doubt a nullity." (*Id.* at pp. 1015–1016; *see also Lewis, supra,* 46 Cal.4th at pp. 1297–1298.)  FN7[.]

FN6. The version of CALJIC No. 2.50.01 considered in *Reliford* instructed the jury: "'If you find that the defendant committed a prior sexual offense . . . , you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. [¶]  However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.  The weight and significance of the evidence, if any, are for you to decide. [¶]  You must not consider this evidence for any other purpose.'" (*Reliford, supra,* 29 Cal.4th at pp. 1011–1012.)

FN7. The court in *Reliford* went on to note that the 2002 version of CALJIC No. 2.50.01 deleted the sentence, "'The weight and significance of the evidence, if any, are for you to decide,'" and inserted "'If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.'"The court characterized this new language as "an

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    improvement," that "provides additional guidance on the permissible use of the
2    other-acts evidence and reminds the jury of the standard of proof for a
     conviction of the charged offenses." (*Reliford, supra,* 29 Cal.4th at p. 1016.)
3    Similar language is included in the instruction the jury received here.

     The Court of Appeal in *People v. Cromp* (2007) 153 Cal.App.4th 476,
4    479–480, considered a similar challenge to CALCRIM No. 1191 and,
     following *Reliford,* rejected it, stating, "Although the instruction considered in
5    *Reliford* was the older CALJIC No. 2.50.01, there is no material difference in
     the manner in which each of the instructions allows the jury to conclude from
6    the prior conduct evidence that the defendant was disposed to commit sexual
     offenses and, therefore, likely committed the current offenses. CALCRIM No.
7    1191, as given here, cautions the jury that it is not required to draw these
     conclusions and, in any event, such a conclusion is insufficient, alone, to
8    support a conviction." (*See also People v. Schnabel* (2007) 150 Cal.App.4th
     83, 87 [in considering challenge to CALCRIM No. 1191, court bound by
9    Reliford because version of CALJIC No. 2.50.01 considered in *Reliford*
     "similar in all material respects" to CALCRIM No. 1191].)
10
     [Petitioner] relies, however, on *People v. James* (2000) 81 Cal.App.4th 1343,
11   1346–1347, 1349 (*James*), which concluded that the 1997 version of CALJIC
     No. 2.50.02, which instructed the jury on considering prior occasions of
12   domestic violence, violated due process "by increasing the likelihood the jury
     would misuse evidence of prior offenses, opening the door to conviction based
13   merely on propensity." He also relies on *Gibson v. Ortiz* (9th Cir.2004) 387
     F.3d 812, 821–822 (*Gibson*), overruled in part on another ground in *Byrd v.*
14   *Lewis* (9th Cir.2009) 566 F.3d 855, 866, which found the 1996 version of
     CALJIC No. 2.50.01 constitutionally infirm. The challenged instructions in
15   those cases told the jury that if it found the defendant had a disposition to
     commit the types of offenses at issue, it could infer that he "'was likely to
16   commit and did commit the crime of which he is accused.'" (*James, supra,* 81
     Cal.App.4th at p. 1350; *Gibson, supra,* 387 F.3d at pp. 821–822.) They did
17   not, however, include the language found in the 1999 version of CALJIC No.
     2.50.01 considered by *Reliford* and in CALCRIM No. 1191, which instructed
18   the jury that a finding the defendant committed the uncharged offenses was not
     sufficient by itself to prove the defendant guilty of the charged offenses.
19   (*Reliford, supra,* 29 Cal.4th at pp. 1012–1013.) *James* and *Gibson* do not assist
     [petitioner].
20
     *Reliford, Cromp,* and *Schnabel* make clear that CALCRIM No. 1191 does not
21   unconstitutionally reduce the People's burden of proof. Accordingly, we reject
     [petitioner]'s challenge to the instruction.
22
23   (Ans., Ex. I at 10–13.)

24         To obtain federal collateral relief for errors in the jury charge, a petitioner must show

25   that the disputed instruction by itself so infected the entire trial that the resulting conviction

26   violates due process. *See Estelle v. McGuire,* 502 U.S. 62, 72 (1991). The instruction may

27   not be judged in artificial isolation, but must be considered in the context of the instructions

28   as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate the

United States District Court
For the Northern District of California

1   jury instructions in the context of the overall charge to the jury as a component of the entire

2   trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*,

3   431 U.S. 145, 154 (1977)).

4        The Due Process Clause requires the prosecution to prove every element charged in a

5   criminal offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). If

6   the jury is not properly instructed that a defendant is presumed innocent until proven guilty

7   beyond a reasonable doubt, the defendant has been deprived of due process. *See Middleton*

8   *v. McNeil*, 541 U.S. 433, 436 (2004). Any jury instruction that "reduce[s] the level of proof

9   necessary for the Government to carry its burden . . . is plainly inconsistent with the

10  constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104

11  (1972).

12       As noted by the state appellate court, CALCRIM No. 1191 is very similar to CALJIC

13  No. 2.50.01 ("Evidence of other sexual offenses"), which was recently reviewed by the Ninth

14  Circuit sitting in habeas review. *Schultz v. Tilton*, 659 F.3d 941 (9th Cir. 2011). In *Schultz*,

15  the criminal defendant raised the same claim as petitioner raises here: that the jury

16  instruction lowered the prosecution's burden to prove every element of a crime beyond a

17  reasonable doubt because it allowed the jury to use the preponderance standard to find him

18  guilty of the charges. *Id.* at 933. Though his jury had received the revised instruction, the

19  defendant in *Schultz* based his contention on an older version of CALJIC No. 2.50.01, which

20  had been found unconstitutional in *Gibson v. Ortiz*, 387 F.3d 812, 822 (9th Cir. 2004). By

21  the time of the *Schultz* decision, CALJIC No. 2.50.01 had been revised and found

22  constitutional. Accordingly, the *Schultz* court, sitting in federal habeas review, rejected the

23  claim that the revised instruction unconstitutionally lowered the prosecution's burden of

24  proof:

25           In contrast with the instructions given in *Gibson*, the 2002 version of CALJIC
             No. 2.50.01 in no way suggests that a jury could reasonably convict a defendant
26           for charged offenses based merely on a preponderance of the evidence.
             Reflecting the revisions made in both 1999 and 2002, the instruction given to
27           Schultz's jury was unambiguous and made clear that Schultz could be
             convicted only if the evidence as a whole "proved [him] guilty beyond a
28

United States District Court
For the Northern District of California

1  reasonable doubt of the charged crime." Cf. *Mendez*, 556 F.3d at 770
2  (distinguishing *Gibson* where "several instructions regarding the beyond a
   reasonable doubt standard were read to the jury after the jury was given the
   preponderance of the evidence instruction").
3

4  *Id.* at 945.

5      As noted by the state appellate court, the jury instruction at issue here, CALCRIM No.

6  1191, contains the same sort of cautionary language that appeared in the revised and

7  constitutional CALJIC No. 2.50.01:

8      If you conclude the [petitioner] committed the uncharged offense itself, that
       conclusion is only one factor to consider along with all the other evidence. [¶]
9      It is not sufficient by itself to prove that the [petitioner] is guilty of lewd and
       lascivious acts on a child under the age of 14 on Jane Doe 1. [¶] The People
10     must still prove each element of every charge beyond a reasonable doubt.

11  (Ans., Ex. I at 10.)

12     Habeas relief is not warranted here. First, the instructions comply with *Winship*. The

13  instruction permits, but does not require, the jury to consider evidence that petitioner

14  committed other offenses. Because the instruction was permissive, the jury was not even

15  required to consider such evidence as it considered whether the evidence established that

16  petitioner committed the charged offense beyond a reasonable doubt. Rather, the jury was

17  free to accept or reject such evidence, and even if it accepted such evidence as true, to give it

18  any weight it chose.

19     Second, petitioner's claim is foreclosed by the Ninth Circuit's decision in *Schultz*.

20  Like the revised CALJIC No. 2.50.01, nothing in CALCRIM No. 1191 lowered the

21  prosecution's burden of proof. The instructions themselves explicitly state that the prior act

22  evidence "is not sufficient by itself to prove that [petitioner] is guilty of lewd and lascivious

23  acts . . . on Jane Doe 1." Rather, the prior act evidence was one factor to consider "along

24  with all the other evidence," and that the prosecutor still had the burden to prove each

25  element of each offense beyond a reasonable doubt. The Court must presume that the jurors

26  followed the instructions and applied the proper legal standard. *See Richardson v. Marsh*,

27  481 U.S. 200, 206 (1987). Based on the foregoing, there was no constitutional violation.

28

1   The state appellate court's rejection of the claim was therefore reasonable, and is entitled to

2   AEDPA deference.  Accordingly, petitioner's claim is DENIED.

3   **III.    Assistance of Counsel**

4           Petitioner alleges that defense counsel rendered ineffective assistance at the (A) trial

5   and (B) pleading stages.  (Second Am. Pet., Mem. of P. & A. at 18.)

6           Claims of ineffective assistance of counsel are examined under *Strickland v.*

7   *Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of

8   counsel, the petitioner must establish two factors.  First, he must establish that counsel's

9   performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

10  under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best

11  practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 778 (2011) (citing

12  *Strickland*, 466 U.S. at 690).  "A court considering a claim of ineffective assistance must

13  apply a 'strong presumption' that counsel's representation was within the 'wide range' of

14  reasonable professional assistance."  *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

15          Second, he must establish that he was prejudiced by counsel's deficient performance,

16  i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the

17  result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A

18  reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

19  Where the defendant is challenging his conviction, the appropriate question is "whether there

20  is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

21  doubt respecting guilt."  *Id.* at 695.  "The likelihood of a different result must be substantial,

22  not just conceivable."  *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

23  The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and

24  when the two apply in tandem, review is doubly so."  *Id.* at 788 (quotation and citations

25  omitted).  "The question [under § 2254(d)] is not whether counsel's actions were reasonable.

26  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

27  deferential standard."  *Id.*

28

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

1  **A.    Assistance of Counsel at Trial**

2      Petitioner claims, without elaboration, that trial counsel rendered ineffective

3  assistance by failing to (1) perform an adequate investigation into the evidence and call

4  witnesses; and (2) present a mental state defense. (Second Am. Pet., Mem. of P. & A. at 18.)

5  Petitioner raised these claims only on collateral state review.  The state appellate and

6  supreme courts, sitting in habeas review, summarily denied these claims.  (Second Am. Pet.

7  at 42 and 44.)  The superior court, in a reasoned decision, denied his ineffective assistance

8  claims because "they are pled in a conclusory fashion and fail to support the [p]etition." As

9  to the "claims that are recognizable and cognizable, the [p]etition fails to make a prima facie

10  case."[2]  (*Id.* at 39.)

11      **1.    Investigation and Calling Witnesses**

12      Petitioner claims that defense counsel failed to perform an adequate pretrial

13  investigation and to call defense witnesses.  These claims do not warrant federal habeas

14  relief.  Petitioner fails to specify exactly what was deficient about counsel's investigation into

15  the evidence, or what specific witness he should have called, or what these unnamed and

16  unknown witnesses would be testified to.  (*Id.*)  Failure to identify such information is a

17  failure to show that trial counsel's performance was deficient, or that the alleged deficiency

18  resulted in prejudice, the necessary showing to sustain an ineffective assistance claim.  *See*

19

20  ───────────────

21  [2] Petitioner contends that his ineffective assistance claims should be reviewed *de novo*, rather than under the deferential AEDPA standard.  According to petitioner, AEDPA does not apply because the superior court did not consider the claims on their merits.

22  (Second Am. Pet., Mem. of P. & A. at 19–21.)  He bases this on the superior court's declaration that some of the claims might be procedurally barred because they are pled in a conclusory fashion and fail to support the petition.  This contention is unavailing.  First, it is

23  not clear what claims the superior court may have regarded as procedurally barred and which are not.  When it is not clear which are barred, the bar is inapplicable, and AEDPA's

24  deferential standard applies.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("when it is clear that a state court has not reached the merits of a properly raised issue, we must review

25  it *de novo*"); *Valero v. Crawford*, 306 F.3d 742, 771–75 (9th Cir. 2002).  Second, even if AEDPA's standard did not apply, the outcome would not change.  Petitioner fails to show

26  any constitutional violation (that he was denied effective assistance), and therefore relief is

27  not available.  If no constitutional violation occurred, the Court need not consider whether the state court's decision was reasonable under AEDPA.

28

United States District Court
For the Northern District of California

1   *Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997). Also, these undetailed claims fail

2   to meet the specificity requirements of habeas pleading, *Mayle v. Felix*, 545 U.S. 644, 661

3   (2005), and *Strickland*'s requirement that a petitioner "must identify the acts or omissions of

4   counsel that are alleged not to have been the result of reasonable professional judgment," 466

5   U.S. at 690.

6          Petitioner raised the issue of trial counsel's allegedly deficient investigation and trial

7   preparation in only one hearing on a motion to change counsel, allegations the trial court

8   rejected as not credible:

9    [Petitioner:]  As far as I know counsel has failed and/or refused to subpoena
10                  witnesses and other evidence favorable to the defense, provide
                    the declarant of evidence critical to the defense.

11                  I've provided my attorney with a witness list of ten witnesses.
12                  This has changed several times since that was given.  Counsel has
                    failed or refused to perform or have performed investigations
                    critical and necessary to the defense.  Specifically counsel has
13                  failed and refused to present all prepared affirmative defenses.
                    It's unknown to me how many there may be, I'm not a
14                  professional attorney.

15                  Counsel has failed or refused to prepare and file motions
16                  necessary for the defense.  Counsel has failed to impeach prosecution
                    witnesses at the prelim and pretrial.

17                  . . . .

18   [Court:]       And what about the failure to subpoena witnesses?

19   [Counsel:]     We have not gotten that close to the trial yet for subpoenaing
20                  witnesses.

     [Court:]       Thank you.  And your failure, alleged failure to investigate?
21
22   [Counsel:]     I have an investigator on this case and we have continued
                    investigation.

23   [Court:]       How about your failure to impeach witnesses?

24   [Counsel:]     I'm not quite sure what that's based on.  We had a preliminary
25                  hearing; I certainly cross-examined the witnesses, and we had a number
                    of serious counts dismissed at the prelim.

26                  . . . .

27   [Court:]       After considering [counsel's] response I find there is no conflict

28
                                                            No. C 12-3633 BLF (PR)
                                13                          ORDER DENYING PETITION

between the two of you or no lack of diligence on [counsel's] part which would justify granting the . . . motion [to change counsel]. The . . . motion [to change counsel] is denied.

(Ans., Ex. L at 367–70.) As this record shows, petitioner's allegations that counsel did not prepare for trial or perform investigations were inquired into and rejected. On such a record, the state appellate court's rejection of his claim of ineffective assistance was reasonable. Petitioner has not shown any reason that this Court should reject the trial court's determination.

Petitioner also alleges without elaboration that his defense suffered from the fact that he and counsel were "at odds" throughout the litigation. (Second. Am. Pet., Mem. of P. & A. at 23.) As with the above claims, petitioner fails to articulate with any specificity on what issues counsel and petitioner were "at odds," nor, more significantly, specifically how being "at odds" operated to petitioner's detriment. As such, this claim must be DENIED as failing to comport with the specificity requirements of *Felix*, 545 U.S. at 661. His three citations to the trial record do not provide evidentiary support. In these examples, petitioner voices complaints about counsel, but none of them show that "the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000). Also, as the trial court found during its hearing on petitioner's motion to change counsel, "there is no conflict between the two of you or no lack of diligence on [counsel's] part which would justify granting the . . . motion [to change counsel]." (Ans., Ex. L at 370.) Petitioner has not shown any reason that this Court should reject the trial court's determination.

On this record, petitioner has not shown that his constitutional rights were violated. The state court's denial of these claims was therefore reasonable, and is entitled to AEDPA deference. Accordingly, these claims are DENIED.

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

United States District Court

For the Northern District of California

## 2. Mental State Defense

Petitioner claims that trial counsel rendered ineffective assistance by failing to investigate and present a mental health defense. (Second Am. Pet., Mem. of P. & A. at 18.)

Before trial, petitioner had been referred for a mental competency examination, which was conducted by Dr. Cushing. Cushing found petitioner competent to stand trial and devoid of mental illness. (Ans., Ex. B, Vol. 2 at 613.) He "did not demonstrate any overt signs or symptoms of a major mental illness," (*id.* at 610), though he did experience some depression (owing to the death of his mother) and anxiety (owing to his criminal trial and incarceration), (*id.* at 613). His thinking was "linear," there were no indications of gross neurological impairment, he showed no psychotic or delusional symptoms, and operated "within the gross-normal range of intelligence." (*Id.*)

Habeas relief is not warranted here because counsel's decision not to proceed with a mental illness defense (or perform further investigation) was a reasonable tactical decision. First, there was no evidence to support such a defense. Petitioner has put forth no such evidence, and Cushing clearly concluded that he had no mental illness.[3] Second, a mental health defense would have contradicted the defense strategy that petitioner did not commit the charged offenses.[4] If he claimed that he was not guilty because of a mental illness, it would be an implicit admission that he committed the acts, though he may have lacked the requisite criminal intent. Trial counsel's decision not to present such a defense was a tactical decision, reasonable under the circumstances. Such tactical decisions must be accorded

---

[3] Petitioner appears to contend that a second competency examination should have been held, or that he was entitled to a second one. (Second Am. Pet., Mem. of P. & A. at 20.) He puts forth no reasons for this and therefore such claim is DENIED. The only statement in Cushing's report that indicates that a further inquiry might be in order is the following: "If [petitioner] were to exhibit overt signs and symptoms of a Delusional Disorder, Persecutory Type, it is respectfully recommended the issue of his competency to stand trial be revisited." (Ans., Ex. B, Vol. 2 at 613.)

[4] When Cushing asked how he would respond to a plea bargain, petitioner responded, "That scenario would never happen because I don't commit crimes." (Ans., Ex. B, Vol. 2 at 611.)

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

1   deference. *Richter*, 131 S. Ct. at 790. Petitioner, then, has not shown that his constitutional

2   rights were violated. The state court's rejection of this claim was therefore reasonable, and is

3   entitled to AEDPA deference. This claim is DENIED.

4         **B.**    **Assistance of Counsel at the Pleading Stage**

5         Petitioner claims that defense counsel rendered ineffective assistance by advising him

6   to plead guilty[5] to charges relating to Jane Doe 2. He alleges counsel informed him that his

7   plea would not bar him from raising any issues on appeal, including his claim that his right to

8   due process was violated by the prosecution's delay in bringing charges. (Second Am. Pet.,

9   Mem. of P. & A. at 18.) On direct appeal, the state appellate court ruled that this due process

10  claim was indeed barred by his plea. (Second Am. Pet. at 40.) Petitioner conceded the legal

11  correctness of this decision in his subsequent petition for review to the state supreme court:

12  "The Court of Appeal in this case held that [petitioner's] guilty plea prevented him from

13  pursuing a speedy-trial claim on appeal. We of course would agree that a claim under the

14  speedy-trial statutes is waived by the guilty plea." (Ans., Ex. J at 26.) He went on to ask the

15  state supreme court to correct this rule. (*Id.*)

16        Before agreeing to plead no contest to the Jane Doe 2 charges, petitioner moved to

17  dismiss the charges on grounds that his rights to due process and a speedy trial were violated.

18  The state appellate court provides a summary of the relevant facts:

19          [Petitioner] contends the trial court should have dismissed the Jane Doe 2 case

20          for delay in bringing it to trial, and that the continuing pendency of that case
        prejudiced his ability to defend himself in the Jane Doe 1 case. The procedural

21          histories of these two claims, one made on appeal of the judgment in the Jane
        Doe 1 case and one on appeal in the Jane Doe 2 case, are interrelated.

22          [Petitioner] was originally charged in the Jane Doe 1 case with offenses against

23          both Jane Doe 1 and Jane Doe 2. One of the offenses against Jane Doe 2 was
        alleged to have taken place between January 1, 1997, and June 1, 2003, and the

24          others between January 1, 1997, and June 1, 1998. The complaint was filed on
        June 20, 2006. After the prosecutor informed the court of her position that the

25          charges related to Jane Doe 2 were barred by the statute of limitations, the trial

26  ───────────────

27      [5] Petitioner pleaded no contest to the charges, but under California law, a plea of *nolo
contendere* in a felony case is the equivalent to a plea of guilty for all purposes. Cal. Penal

28  Code § 1016. He acknowledged this fact in his plea agreement. (Ans., Ex. C at 145.)

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

court discharged [petitioner] as to those counts.

Upon further review, the People decided to refile charges against [petitioner] in connection with offenses against Jane Doe 2, and filed a complaint in the Jane Doe 2 case on August 9, 2007. The offenses were alleged to have taken place between September 1, 1997, and June 1, 1999.

Trial in the Jane Doe 1 case began approximately a month later, on September 4, 2007. On the first day of trial, [petitioner] moved in limine to exclude Jane Doe 2's testimony, based in part on the ground that due to the "procedural morass" created by "late refiling" of the charges in the Jane Doe 2 case, he was faced with the choice of revealing his planned defense to Jane Doe 2's charges or failing to respond fully to the testimony she gave in the Jane Doe 1 case.

[Petitioner] filed a motion to dismiss the Jane Doe 2 case for denial of his right to a speedy trial on October 22, 2007. In the motion, he contended that Jane Doe 2's allegations had been known since late 2002 or early 2003, that she had given a statement to police and been interviewed at the Center in November 2004, that no charges had been filed at either time, that the charges originally filed against [petitioner] had been dropped in December 2006, and that in the time since the allegations were first known, physical evidence and witnesses had become unavailable.

On November 1, 2007, [petitioner] waived his right to a preliminary hearing in the Jane Doe 2 case, and at the same time withdrew the speedy trial motion without prejudice "until a better time."

On December 14, 2007, [petitioner] again moved to dismiss the Jane Doe 2 case on the ground that he had been denied his rights to due process and a speedy trial. In this motion, he argued that the preaccusation delay — that is, the delay between the time the crimes were allegedly committed and the time he was formally charged in the Jane Doe 2 case on the eve of the trial in the Jane Doe 1 case — deprived him of due process. He contended that his ability to present a defense in the Jane Doe 1 case was hindered by the pending charges in the Jane Doe 2 case, because in responding to Jane Doe 2's testimony in the Jane Doe 1 case, he risked revealing his intended defense strategy in the Jane Doe 2 case. FN9[.] As a result, he argued, he was now faced with the possibility of being impeached with the convictions in the Jane Doe 1 case if he elected to testify in the Jane Doe 2 case. [Petitioner] did not renew his argument that evidence had become unavailable to him as a result of the delay. The trial court denied the motion, finding [petitioner] had not shown prejudice from the delay.

FN9. [Petitioner] indicated the delay at issue in this motion was that between December 2006 when the charges relating to Jane Doe 2 in the Jane Doe 1 case were dismissed, and August 2007 when the charges in the Jane Doe 2 case were filed.

1. Issues Raised in Appeal of Judgment in Jane Doe 1 Case

[Petitioner] contends he was prejudiced by the delay in renewing charges related to Jane Doe 2 until shortly before the trial of the charges related to Jane Doe 1. He argues as follows: the delay in filing charges in the Jane Doe 2 case

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

1     was deliberate and unjustified and caused him prejudice; accordingly, he was
2     deprived of his right to a speedy trial in the Jane Doe 2 case; as a result, the
      Jane Doe 2 case should have been dismissed; because the Jane Doe 2 case
3     remained pending rather than being dismissed, he was forced to choose
      between presenting a vigorous defense in the Jane Doe 1 case (including
4     presenting his own testimony) and running the risk of revealing his defense
      strategy in the Jane Doe 2 case to the prosecution; and he suffered prejudice
5     because Jane Doe 2's testimony was critical to his conviction in the Jane Doe 1
      case.

6     We are unpersuaded by this line of argument. We first note that [petitioner] did
      not seek to have the charges in the Jane Doe 2 case dismissed until after the
7     trial in the Jane Doe 1 case. Accordingly, at least for purposes of the Jane Doe
      1 case, he has forfeited the argument that the Jane Doe 2 case should have been
8     dismissed if Jane Doe 2 were to testify in the Jane Doe 1 case. [Citations
      omitted.]

(Ans., Ex. I at 16–18.)  To reiterate, petitioner's renewed motion to dismiss the charges

related to Jane Doe 2 was based solely on the eight-month delay between December 2006

when the charges relating to Jane Doe 2 in the Jane Doe 1 case were dismissed, and August

2007 when the charges in the Jane Doe 2 case were refiled.[6]

    After a defendant has entered a plea of guilty, the only challenges left open on federal

habeas corpus review concern the voluntary and intelligent character of the plea and the

adequacy of the advice of counsel.[7]  Where, as here, a petitioner is challenging his guilty

plea, he must show (1) his "'counsel's representation fell below an objective standard of

reasonableness,'" and (2) "'there is a reasonable probability that, but for [his] counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial.'"

*Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S.

52, 56–57).

---

[6] Petitioner alleges that he made a speedy trial motion and it was ruled on. (Second
Am. Pet., Mem. of P. & A. at 22.)  The record does not support this allegation.  The transcript
shows that the court reviewed and ruled on a motion relating to the eight-month
preaccusation delay.  (Ans., Ex. E, Vol. 27 at 3455–58.)

[7] There are exceptions to this general bar.  For example, a defendant who pleads guilty
still may raise in habeas corpus proceedings the very power of the state to bring him into
court to answer the charge brought against him, *see Haring v. Prosise*, 462 U.S. 306, 320
(1983) (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)), and may raise a double jeopardy
claim, *see id.* (citing *Menna v. New York*, 423 U.S. 61 (1975)).

1    Habeas relief is not warranted here.  First, the record flatly contradicts petitioner's

2    contention that counsel told him that he was not waiving his right to appeal any claims based

3    on pre-plea constitutional violations, including the delay in bringing charges.  In his plea

4    agreement, petitioner indicated that he understood that his decision to enter a plea resulted

5    from sufficiently long discussions with his trial counsel about the nature, elements of,

6    defenses to, and *consequences of* pleading to, the charges.  (Ans., Ex. C at 145.)  He also

7    indicated that he understood that "[a]ll promises made to me are written on this form, or

8    stated here in open court.  *There have been no other promises, or suggestions made in order*

9    *to get me to enter this/these plea(s)*."  (*Id.*) (emphasis added).  At his plea entry hearing,

10   petitioner acknowledged that he had signed this same plea agreement and understood its

11   contents.  (*Id.* at 158.)  When asked whether he understood the specifics of the charges and

12   whether he understood that he was waiving his trial rights, petitioner clearly answered in the

13   affirmative.  (*Id.* at 6.)  Such assertions at the plea hearing carry great significance:

14       [T]he representations of the defendant, his lawyer, and the prosecutor at [ ] a
         [plea] hearing, as well as any findings made by the judge accepting the plea,
15       constitute a formidable barrier in any subsequent collateral proceedings.
         Solemn declarations in open court carry a strong presumption of verity.  The
16       subsequent presentation of conclusory allegations unsupported by specifics is
         subject to summary dismissal, as are contentions that in the face of the record
17       are wholly incredible.

18   *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (citations omitted).

19       Second, even if counsel had misinformed petitioner (a contention contradicted by the

20   record), petitioner has not shown a reasonable probability that, but for counsel's errors, he

21   would not have pleaded guilty and would have insisted on going to trial.  Petitioner never

22   stated during the superior court proceedings that he would not have pleaded guilty if he

23   thought he was waiving his right to appeal his claim regarding the charging delay.  At his

24   sentencing hearing, in addition to reiterating his many complaints about counsel's

25

26

27

28

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

1   representation, he stated that counsel had given his "assurance that my *West*[8] type plea would

2   preserve my right to appeal," though he doesn't state what issues he believed this assurance

3   covered. (Ans., Ex. N at 3861.)  In response, counsel said he had discussed with petitioner

4   all the many issues raised at the hearing, and that "one of the considerations" was the speedy

5   trial claim.  He said that he told petitioner he believed there would be a basis for an appeal on

6   such a claim, and that he "was preparing the ground for that." (*Id.* at 3867.)  Petitioner never

7   stated that he would not have pleaded guilty but for counsel's assurance.  Also, in his petition

8   for review to the state supreme court, he conceded that a guilty plea waived pre-plea claims

9   was correct. (*Id.*, Ex. J at 26.)

10      Also, he has not shown any likelihood that his claims regarding the charging delay

11  would have been successful on appeal.  In order to succeed on a claim of preaccusation

12  delay, a defendant must demonstrate that the delay actually prejudiced his ability to defend

13  himself. *United States v. Bracy*, 67 F.3d 1421, 1427 (9th Cir. 1995).  Proof of prejudice is a

14  "heavy burden that is rarely met," and it must be definite and not speculative. *Unites States*

15  *v. Corona- Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (internal quotations omitted).  Such

16  proof is usually the loss of evidence or witnesses. *Id.*  In his pre-plea motion on this claim,

17  petitioner asserted without elaboration that he was prejudiced by the fact that the Jane Doe 1

18  verdict now constituted a prior conviction.  The trial court found no showing of actual

19  prejudice because the harm created by the conviction was "speculation at best." (Ans., Ex. E

20  at 3458.)  Petitioner is unable here to show actual prejudice.  In fact, the impeachment value

21  of a felony conviction obtained during an allegedly unconstitutional delay is insufficiently

22  prejudicial to support a claim that the delay resulted in prejudice. *United States v. Krasn*, 614

23  F.2d 1229, 1235 (9th Cir.1980).  Also, in his petition, petitioner makes no showing that

24  evidence of any value was lost.  He then has not met the "heavy burden" standard of

25

26  ───────────────

27  [8] A *West* plea is a "plea of nolo contendere, not admitting a factual basis for the plea."
*In re Alvernaz*, 2 Cal.4th 924, 932 (Cal. 1992) (citing *People v. West*, 3 Cal.3d 595 (Cal. 1970).

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   *Corona-Verbera.*

2        The result is the same under a speedy trial claim analysis. A criminal defendant has a

3   constitutional right to a speedy trial. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).

4   No per se rule has been devised to determine whether the right to a speedy trial has been

5   violated. Instead, courts must apply a flexible "functional analysis," *Barker v. Wingo*, 407

6   U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth

7   Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the

8   defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United*

9   *States*, 505 U.S. 647, 651 (1992); *Barker*, 407 U.S. at 530. None of the four factors is either

10  a necessary or sufficient condition for finding a speedy trial deprivation. *Barker*, 407 U.S. at

11  533. They are related factors and must be considered together with such other circumstances

12  as may be relevant. *Id.* However, the speedy trial right does not attach until the putative

13  defendant in some way becomes an accused, through indictment or arrest. *U.S. v. Velazquez*,

14  749 F.3d 161 (3d Cir. 2014).

15       The first factor, the length of the delay, does not weigh in favor of petitioner. The

16  speedy trial right did not attach until charges were filed, that is in 2007, the same year in

17  which he pleaded guilty.[9] Less than a year is not presumptively prejudicial. Because the

18  delay was less than a years, the second factor, the reason for the delay, carries little or no

19  weight. The third factor, petitioner's assertion of his right, does not weigh in favor of

20  petitioner. Though he did assert this right in a motion, he withdrew this motion and never

21  renewed it. The fourth factor does not weigh in favor of petitioner. He has made no showing

22  that any evidence was lost or that the delay deprived him of any defenses to the charges.

23       Also, even if counsel's advice was in error, petitioner has not shown prejudice. He

24  greatly benefitted from the plea bargain. If he had been convicted on all charges relating to

25

26  _____

27  [9] The 2006 filing cannot function as the start of the delay period because those charges
    were dismissed. *U.S. v. MacDonald*, 456 U.S. 1, 7 (1982).

28

Jane Doe 2, he could have received a prison term of up to 12 years, rather than the 2 years he received as a result of his plea. Also, his conviction on the Jane Doe 2 charges was likely. This can be inferred from the fact that his recent conviction at the Jane Doe 1 trial was based in part on Jane Doe 2's testimony, testimony the jury found "very persuasive, (Ans., Ex. A, Vol. 2 at 488), so persuasive that it "sealed" their votes for a guilty verdict, (*id.*, Ex. C at 115).

In sum, petitioner has not shown that his constitutional rights were violated. The state court's decision is therefore reasonable and is entitled to AEDPA deference. Accordingly, the claim is DENIED.

## IV.    Cumulative Error

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

Because petitioner has not shown a single constitutional error, his cumulative error claim necessarily fails. The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: _Dec 3, 2014_

BETH LABSON FREEMAN
United States District Judge

No. C 12-3633 BLF (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California